# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RALPH EADS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No.  04-0200 (ESH)** |
| | : | |
| **JAMES H. BILLINGTON,** | : | |
| **Librarian of Congress,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## MEMORANDUM OPINION

Plaintiff Ralph Eads, an employee at the Library of Congress ("LOC"), alleges age and race discrimination, as well as retaliation, by his employer in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  Specifically, Eads claims that the LOC failed to inform him of overtime opportunities and to provide necessary training, denied him a promotion, and retaliated against him by assigning him to an undesirable rotation within the LOC.  Defendant now moves to dismiss certain of plaintiff's claims, arguing that the Court lacks jurisdiction because plaintiff failed to exhaust his administrative remedies and seeks summary judgment with respect to plaintiff's remaining claims, asserting that plaintiff failed to produce evidence sufficient to permit a reasonable jury to find in his favor.  For the reasons discussed below, the Court agrees and will grant defendant's motion.

## BACKGROUND

Plaintiff is a 56 year-old white male who has worked at the LOC since March 1973. (Comp. ¶¶ 3, 6.)  Plaintiff suffers from Benign Idiopathic Splenomegaly, a disability that restricts his ability to lift or push heavy objects.   (Def.'s Statement of Material Facts (Def.'s Facts), Ex.

2; Pl.'s Opp'n to Def.'s Mot. to Dismiss or for Summ. J. (Pl.'s Opp'n), Ex. A at 46, 61.)  At all

times relevant to this action, plaintiff was employed as a GS-7 Copyright Technician (Materials

Expeditor) in the Materials Control Section of the Copyright Office of the LOC.[1]  (Def.'s Facts

¶ 2.)  Plaintiff's grievances extend as far back as 1994, when he requested "registration and

numbering scanning" training but did not receive such training because of a machine malfunction

that prevented anyone from receiving the training.  (*Id*. ¶ 14.)  Plaintiff reportedly requested

training sometime between 1997 and 1999 and then a third time in late 2000 or early 2001.  (*Id*.

¶¶ 13-16.)  Plaintiff cannot identify any employee who received "registration and numbering

scanning" training during the relevant time periods.  (*Id*.)  Plaintiff also asserts that he was

denied "special handling training" in 2000 when other employees in fact received such training.

(Pl.'s Opp'n at 7.)  Defendant contends, however, that the training was available to him; plaintiff

was merely directed by his supervisor to speak with John Smith to schedule the training.  (Def.'s

Facts ¶ 11.)  Smith was in the midst of training another employee and told plaintiff he would

receive the training at a later date.  (Def.'s Facts ¶ 12; Pl.'s Opp'n at 7, Ex. A at 53.)  Plaintiff did

not follow up with Smith at any point to reschedule the training.  (Def.'s Facts ¶ 12.)

---

[1]Unless otherwise noted, all facts drawn from the Defendant's Statement of Material
Facts are uncontested.  It remains, however, the burden of the party opposing summary judgment
to produce evidence of "specific facts showing that there is a genuine issue for trial."  *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  To do so the party must provide "references to
the parts of the record relied on to support the statement."  LCvR 7(h) & 56.1.  Some of
plaintiff's responses consist of "boilerplate denials" and "unsubstantiated allegations" that cannot
be credited by this Court.  *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 24 n.2 (D.D.C.
2004).  It is not the responsibility of the Court to search the record for facts that might support
the plaintiff's claim.  Thus, where the Court has been unable to ascertain the evidence supporting
plaintiff's denial of Defendant's Statement of Material Facts and defendant's statement has
record support, the Court has treated the fact as conceded.

In addition to depriving him of training, plaintiff claims the LOC denied him the opportunity to work overtime.  (Pl.'s Opp'n at 6.)  In March or April 2001, D'Andrea Hamn sent a message to the supervisors within the Materials Control section notifying them of overtime opportunities for staff and requesting that they contact her with the names of interested employees.  (Def.'s Facts ¶ 3; Pl.'s Opp'n Ex. A at 55.)  Mr. Eads did not learn of the possibility for overtime until September.  (*Id.*)  On September 12, 2001, plaintiff sent Ms. Hamn a memorandum indicating his interest in working overtime.  (Def.'s Facts ¶ 6, Ex. 3.)  Ms. Hamn responded via memo on September 13, 2001, informing plaintiff that she had issued the overtime notice to supervisors in March or April and received a list of 16 people interested in working overtime.  (Pl.'s Opp'n Ex. A at 55.)  Of the people who had worked overtime between March and September, some were Caucasian and some were African-American.  (Def.s Facts ¶ 4, Ex.1 at 62.)  Plaintiff followed up on September 24, 2001, asking to see a list of the people who worked overtime.  (Pl.'s Opp'n Ex. A at 55.)  Attached to plaintiff's September 24 memo was another memo dated September 13, 2001, containing the signatures of two other employees who had not been informed of the overtime opportunity.  (*Id.*; Def.'s Facts Ex. 5.)  Those two employees, Ben Littlejohn and Herman Lewis, are African-American.  (Def.'s Facts Ex. 1 at 61-62.)  Ms. Hamn notified plaintiff via memo on September 25, 2001, that his name had been added to the overtime list and that he would need a brief training session to prepare him for the work that needed to be done.  (Def.'s Facts Ex. 6.)  She also alerted him to the fact that the physical demands of the overtime work included lifting items weighing 25 pounds or more.  (*Id.*)  Mr. Eads never followed up with Ms. Hamn regarding the required training.  (Def.'s Facts Ex. 2 at 2.)

Plaintiff's third allegation of discrimination involves his non-selection for a GS-9 position as a Copyright Area Specialist.  In July 2001, plaintiff applied for the position in response to a posted vacancy announcement.  (Def.'s Facts ¶ 20, Ex. 7.)  Three vacancies for the Area  Specialist position existed.[2]  (Def.'s Facts ¶ 19.)  Two supervisors, John Smith and Renaldo Spivey, were responsible for filling those positions.  (Def.'s Facts ¶ 18.)  Four applicants were deemed minimally qualified by the Office of Personnel Management and were interviewed by Mr. Smith and Mr. Spivey.[3]  (Def.'s Facts ¶¶ 23-24.)  In addition to plaintiff, the applicants interviewed were Chris Steve, Sylvester Simpkins and Juanita Jackson.  (Def.'s Facts ¶ 21.)  Mr. Steve, Mr. Simpkins and Ms. Jackson are all African-American.  (Pl.'s Opp'n Ex. A at 4-5.)  Like plaintiff, each was a GS-7 Material Expeditor.  (Def.'s Facts ¶ 21.)  Mr. Smith and Mr. Spivey, who had directly supervised each of the candidates to some extent, determined that Mr. Steve, Mr. Simpkins and Ms. Jackson performed better in the interview than did plaintiff.  (Def.'s Facts ¶ 24, Ex. 11 at 1.)  Mr. Eads disputes their evaluation, claiming that he "provided as much information as the other applicants and Smith did not record all of the information" he

---

[2]Plaintiff contests this, arguing that in fact four vacancies existed due to retirements.  (Pl.'s Opp'n ¶¶ 19-20.)  A review of Mr. Smith's and Mr. Spivey's deposition transcripts indicates, however, that plaintiff has conflated their testimony regarding the number of available positions.  Each testified that there were three available positions.  (Def.'s Facts Ex. 6 at 27:17-18, Ex. 8 at 8:20-22.)  Mr. Spivey testified that there were two positions available on his team, and one on Mr. Smith's.  (Def.'s Facts Ex. 6 at 27:17-22.)  Mr. Smith, however, testified that there were two positions available on his team, and one on Mr. Spivey's.  (Pl.'s Opp'n Ex. D at 8-9.)  Plaintiff reads this testimony to indicate that there were four vacancies, ignoring the fact that both supervisors testified to the existence of only three vacancies.  (Pl.'s Opp'n ¶¶ 19-20.)  The Court notes the contradictory testimony regarding to which team the new hires would be assigned, but finds that the testimony is uncontroverted as to the total number of vacancies.

[3] A fifth candidate was deemed minimally qualified but was not interviewed for unrelated reasons.  (Def.'s Facts Ex. 11.)

provided.  (Pl.'s Opp'n ¶ 24.)  In support he cites to notes taken during the interviews by one of

the interviewers.[4/]  (Pl.'s Opp'n Ex. A at 231-70.)  The most recent performance evaluations for

each of the candidates was as follows: Ms. Jackson, "outstanding;" Mr. Simpkins, "outstanding;"

Mr. Steve, "excellent;" Mr. Eads, "satisfactory."  (Def.'s Facts ¶¶ 25-28.)  Plaintiff concedes that

he was given a "satisfactory" performance rating, but argues that it was based on inaccurate

information.  (Pl.'s Opp'n ¶ 25, Ex. A at 51.)  He further notes that Mr. Steve received a

counseling memorandum regarding a violent incident with a fellow employee that occurred on

May 7, 2001.  (Pl.'s Opp'n ¶ 26, Ex. A at 227.)  Mr. Steve, Mr. Simpkins and Ms. Jackson were

hired for the three available Area Specialist positions.  (Def.'s Facts ¶ 29.)  Plaintiff was

informed on October 15, 2001 that he had not been selected for the GS-9 position.  (Pl.'s Opp'n

Ex. A at 47.)

Mr. Eads' final allegation is that Mr. Spivey retaliated against him for filing an EEO

complaint by reassigning him to the assembly area in October 2002.  (Pl.'s Opp'n at 18, Ex. A at

46.)  Mr. Spivey argues that his policy was to rotate all material expediters through the assembly

area to provide experience helpful to them in performing their usual job.  (Def.'s Facts ¶ 31.)

Plaintiff asserts that the transfer resulted in him having to lift or carry boxes in excess of the

weight restrictions in place to accommodate his disability.  (Pl.'s Opp'n Ex. A at 46.)  The LOC

counters that not only was Mr. Spivey aware of the lifting restrictions in place to protect plaintiff,

but he specifically instructed plaintiff in writing not to lift anything over 25 pounds.  (Def.'s

Facts ¶ 32, Ex. 6 at 88-9; Ex. 15.)  Mr. Spivey provided plaintiff with a scale to enable him to

ensure that he did not carry items exceeding the weight limit and instructed other assembly area

---

[4/] It is not clear from the record whether they are Mr. Smith's or Mr. Spivey's notes.

employees to place heavy boxes on the table where plaintiff was working so that he would not

have to lift them.  (Def.'s Facts ¶¶ 32-33.)  Mr. Eads never complained to Mr. Spivey during his

time in the assembly room about having to lift more than the restricted amount.  (Def.'s Facts Ex.

6 at 89.)

Plaintiff sought EEO counseling on September 28, 2001, and filed a formal complaint on

April 16, 2002.  (Def.'s Facts ¶ 34.)  The complaint raised both his concerns regarding the

assignment of overtime within the Materials Control division and his non-selection for the GS-9

vacancy.  (Def.'s Facts ¶ 34, Ex. 16.)  Plaintiff filed this lawsuit on February 17, 2004, and upon

the completion of discovery, defendant filed this dispositive motion.

## ANALYSIS

### I.   Legal Standard

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that

there is no genuine issue of material fact, and that the moving party is entitled to judgment as a

matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In considering a

motion for summary judgment, the "evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor."  *Id*. at 255; *see also Wash. Post Co. v. U.S.*

*Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P.

56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party must provide

evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial."  *Calhoun v. Johnson*, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation omitted), *aff'd*, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000).

To decide a summary judgment motion in a discrimination case, the Court applies the *McDonnell Douglas* three-part "shifting burdens" test.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiff has the initial burden of proving a prima facie case of discrimination. *Id.* at 802.  To do so, plaintiff must establish: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination.  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  If he succeeds, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").  If defendant is successful, then "the *McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is]

discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43

(2000) (internal citations and quotation marks omitted).  At that point, plaintiff has the burden of

persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason

for the employment decision.  *Burdine*, 450 U.S. at 256; *see also Morgan v. Fed. Home Loan*

*Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) ("Although the *McDonnell Douglas*

framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff.") (internal citations and quotation marks omitted).  "At this

stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to

conclude that [defendant's] proffered reason was a pretext for discrimination [or retaliation],

summary judgment must be entered against [plaintiff]."  *Paquin v. Fed. Nat'l Mortgage Ass'n*,

119 F.3d 23, 27-28 (D.C. Cir. 1997).

## II.     Denial of Training Opportunities

Plaintiff's first claim relates to the training opportunities allegedly denied him by the

LOC.  As detailed above, plaintiff  claims to have sought and not received "registration

numbering scanning" training three times between 1994 and early 2001.  (Def.'s Facts ¶¶ 13-16.)

In addition, plaintiff did not receive "special handling training" in 2000.  (Def.'s Facts ¶¶ 10-11.)

Defendant asserts that these claims are barred by Title VII's exhaustion requirement.

Lodging a timely administrative charge is a prerequisite to filing a Title VII claim.  *See*

*Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985).  An employee complaining of

discrimination must consult an EEO counselor within 45 days of the date of the allegedly

discriminatory action to try to informally resolve the matter.  *See* 29 C.F.R. § 1614.105(a)(1).

Discrimination claims alleging conduct that occurred more than 45 days prior to the initiation of administrative action are generally time-barred in a subsequent court action. *See Valentino v. U.S. Postal Serv.*, 674 F.2d 56, 65 (D.C. Cir. 1982). These procedural requirements governing plaintiff's right to bring a Title VII claim are not mere technicalities, but "part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983) (citations omitted). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The deadlines allow an employer to investigate promptly before evidence becomes stale. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980) (Title VII administrative filing requirement protects employers from burden of defending claims that arise from decisions made long ago). It is defendant's burden to prove that plaintiff failed to properly exhaust his administrative remedies. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Brown*, 777 F.2d at 13.

Plaintiff first sought EEO counseling on September 28, 2001. Under the terms of 29 C.F.R. § 1614.105(a)(1), plaintiff is time-barred from litigating any discrete acts of discrimination that took place prior to August 14, 2001 -- 45 days prior to his first EEO action. Plaintiff does not contest that no instance in which he was denied "special handling" or "registration numbering scanning" training occurred after early 2001. Even giving "early 2001" wide latitude, the phrase cannot be understood to apply to events after August 14, 2001. Therefore the Court finds that plaintiff failed to timely exhaust his administrative remedies with

respect to the LOC's failure to provide him "special handling" and "registration and numbering scanning" training.

### III.    Non-Selection for Overtime and Promotion

The Court now turns to plaintiff's claims that the LOC discriminated against him on the basis of race by denying him overtime opportunities and failing to promote him. As discussed above, in order to meet his initial burden under *McDonnell Douglas*, plaintiff must make out a prima facie case of discrimination by establishing: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Brody*, 199 F.3d at 452.

It is well established that "whites as well as minorities are protected by Title VII." *Bishopp v. Dist. of Columbia*, 788 F.2d 781, 786 (D.C. Cir. 1986) (*citing McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976)). Further, it is uncontested by the parties that a failure to promote and the denial of overtime opportunities constitute adverse employment actions because both involve "materially adverse consequences." *Brody*, 199 F.3d at 457. Therefore, defendant concedes that plaintiff has met the first two elements of the prima facie test. In order to meet the third element, however, plaintiff, as a white male, must show "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981). This requirement is not intended to disadvantage whites, but "merely substitutes for the minority plaintiff's burden to show that he is a member of a racial minority." *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993). An "allegation of superior qualifications," such as plaintiff makes here (Def.'s Opp'n at 8, ¶ 23), is sufficient to meet plaintiff's burden. *Harding*, 9 F.3d at 153.

Thus, plaintiff has made out a prima facie case with respect to his non-selection for the GS-9 position.

Plaintiff has failed, however, to introduce evidence that would support an inference of discriminatory intent with respect to the LOC's allocation of overtime assignments. D'Andrea Hamn, who was the Registration and Numbering Section of the Copyright Office, sent an email to all supervisors in the Receiving and Processing Division asking them to alert their staff of the overtime opportunities, but not every supervisor followed her instructions. (Def.'s Facts ¶ 3, Ex. 2 at 1.) When plaintiff became aware of the overtime opportunities, he immediately alerted Ms. Hamn and was placed on the list to receive an overtime assignment. (Def.'s Facts ¶¶ 6-7.) Plaintiff was told that he needed to receive particular training to qualify for the assignment, but he never pursued the required training. (Def.'s Facts ¶ 9.) Yet by plaintiff's own testimony, he was not the only employee who was not made aware of the overtime opportunities; other employees failed to receive this information as well. (Def.'s Facts ¶ 5, Ex. 1 at 61-62.) Of particular importance -- given plaintiff's claim that his exclusion was the product of racial discrimination -- some of the employees who were not made aware of the overtime opportunities were African-American. (*Id.*) Additionally, the employees who did learn of and take advantage of the overtime opportunities consisted of both whites and blacks. (*Id.*, Ex. 1 at 62.) These facts demonstrate no disparate treatment based on race by the LOC with respect to overtime assignments. Thus, plaintiff cannot make out a prima facie case on this issue.

Because plaintiff made his prima facie case with respect to the GS-9 selection, the defendant now bears the burden of articulating a legitimate, non-discriminatory rationale to support its decision not to promote Mr. Eads. *See McDonnell Douglas Corp.*, 411 U.S. at 802.

If the defendant is able to do so, the burden shifts back to the plaintiff to show that the

defendant's proffered explanation is pre-textual.  *Burdine*, 450 U.S. at 255-56.  To rebut Mr.

Eads' allegation of discrimination, the LOC asserts that he simply was not as qualified as the

three candidates selected.  (Def.'s Facts ¶ 29.)  Defendant points to the most recent performance

ratings for each candidate preceding the selection process, which graded Ms. Jackson and Mr.

Simpkins as "outstanding" and Mr. Steve as "excellent."  (*Id.* ¶¶ 26-28.)  By contrast, plaintiff's

performance rating for the preceding two appraisal periods was "satisfactory."  (*Id.* ¶ 25.)  In

addition, though plaintiff disputes the record on this point (Pl.'s Opp'n ¶ 25, Ex. A at 51),

defendant's selection memo indicates that plaintiff did not perform as well in his interview as the

other candidates.  (Def.'s Facts ¶ 24, Ex. 11.)  Plaintiff contests the LOC's assessment of his

relative qualifications, pointing to his longer tenure at the GS-7 level, a disciplinary letter issued

to one of the candidates ultimately selected, and the fact that all the applicants promoted were

African-American.  (Pl.'s Opp'n at 14-15.)  Mere seniority, however, does not prove an

applicant's merit.  *See Crockett v. Richardson*, 127 F. Supp. 2d 40, 47 (D.D.C. 2001), *aff'd sub*

*nom.*, *Crockett v. Abraham*, 284 F.3d 131 (D.C. Cir. 2002).  And while a disciplinary letter may

constitute a black mark on one's application, it hardly excludes an employee from all possibility

of future promotion.  Furthermore, from an applicant pool in which three of four candidates were

African-American, the fact that the three successful candidates were African-American permits

no inference of discrimination on the basis of "overrepresentation."  Plaintiff's disputation of the

content of his reviews and the qualifications of his fellow applicants is of limited legal import

because "[o]nce the employer has articulated a non-discriminatory explanation for its action, . . .

the issue is not the correctness or desirability of the reasons offered but whether the employer

honestly believes in" them. *Fishbach v. Dist. of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183

(D.C. Cir. 1996). Plaintiff claims that Mr. Smith failed to accurately record plaintiff's responses

during his interview, but has no evidence to offer in support. (Pl.'s Opp'n ¶ 24.) Since plaintiff

has introduced no evidence demonstrating that the hiring officials did not honestly believe the

other candidates to be better qualified, he has failed to rebut defendant's articulated non-

discriminatory rationale.

Moreover, even assuming *arguendo* that plaintiff could argue that he was more qualified,

the Court cannot infer discrimination absent a showing that his qualifications were far superior to

those of the successful candidates. *See Stewart v. Ashcroft*, 352 F.3d 422, 429-30 (D.C. Cir.

2003) (a plaintiff proffering evidence of "stark superiority of credentials" between himself and

the successful candidate may survive summary judgment, while a plaintiff demonstrating only

"fine distinctions" between their qualifications will not); *Aka v. Washington Hosp. Ctr.*, 156

F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (discrimination may be inferred if a reasonable

employer would have found the plaintiff to be significantly better qualified for the job); *see also*

*Edwards v. Principi*, 80 Fed. Appx. 950, 952 (5th Cir. 2003) (to show pretext, plaintiff must

"show a difference in his qualifications superior to that of the person selected so apparent as to

virtually jump off the page and slap us in the face") (internal citation and quotation marks

omitted). As the D.C. Circuit has noted, "Title VII . . . does not authorize a federal court to

become 'a super-personnel department that reexamines an entity's business decisions.'" *Barbour*

*v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (*quoting Dale v. Chi. Tribune Co.*, 797 F.2d

458, 464 (7th Cir. 1986)). Absent admissible evidence sufficient to permit a reasonable jury to

conclude that plaintiff was vastly better qualified for the position -- and not enough has been

presented here -- Mr. Eads' claim of discrimination for the LOC's failure to promote him cannot survive summary judgment.

## IV.     Reassignment

Plaintiff's final claim is that his reassignment to the Assembly Room was an act of retaliation resulting from his decision to file a formal EEO complaint.  (Pl.'s Opp'n at 18.)  To establish a prima facie case of retaliation, plaintiff must demonstrate that: (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two.  *Brody*, 199 F.3d at 452.  If plaintiff succeeds in making his prima facie case, the same burden shifting analysis used for discrimination claims applies.  *Cones v. Shalala*, 199 F.3d 512, 520-21 (D.C. Cir. 2000).

There is no question that filing a formal EEO complaint constitutes protected activity under Title VII.  Therefore, the Court will consider: first, whether the transfer was an "adverse employment action," and second, whether plaintiff has demonstrated a causal connection.  To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment."  *Brody*, 199 F.3d at 457.  An "employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."  *Walker v. WMATA*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (citation omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

-14-

Plaintiff does not claim that his transfer resulted in any diminution of his pay or benefits.  Indeed,

plaintiff concedes that it was a rotational assignment.  (Def.'s Mot. at 14, Ex. 1 at 177:4-16.)

Instead, he argues that he was promised when he first joined the office that he would not have to

perform the rotation because of the lifting involved with the job and LOC's inability at that time

to provide a reasonable accommodation.[5/]  (Pl.'s Opp'n ¶ 30, Ex. A at 46.)  Yet it is well

established that purely lateral transfers do not reach the threshold required for an adverse

employment action merely because they are less convenient for the employee.  *Brody*, 199 F.3d

at 456-57.  Plaintiff's transfer was neither a "formal" nor a "substantive" demotion.  *Id.*

Therefore, the Court cannot accept plaintiff's argument that his reassignment constituted an

"adverse action."

Even if the transfer could be considered adverse, plaintiff's retaliation claim would still

fail for lack of proof of causation.  Plaintiff has introduced no direct evidence that his transfer

was ordered in retaliation for his protected activity.  In the absence of direct evidence, the Court

may infer a causal connection on a "showing that the employer had knowledge of the employee's

protected activity, and that the adverse personnel action took place shortly after that activity."

---

[5/] To the extent that plaintiff may be arguing that the transfer violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Court need not consider this issue as plaintiff raised no ADA claim in his Complaint, nor was the issue briefed with respect to the motion before the Court.  The Court notes, nonetheless, that the facts do not support plaintiff's claim that his disability was not accommodated.  Plaintiff's supervisor instructed him in writing not to lift any objects in excess of the weight limits established by his doctor.  (Def.'s Facts ¶ 32, Ex. 6 at 88-9, Ex. 15.)  Mr. Spivey provided plaintiff with a scale to enable him to ensure that he did not carry items exceeding the weight limit and instructed other assembly area employees to place heavy boxes on the table where plaintiff was working so that he would not have to lift them.  (Def.'s Facts ¶¶ 32-33.)  Mr. Eads never complained to Mr. Spivey during his time in the assembly room about having to lift more than the restricted amount.  (Def.'s Facts Ex. 6 at 89.)  There is thus no factual basis for an ADA claim even had one properly been raised.

*Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985). "By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed for a prima facie case of retaliation." *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 42-43 (D.D.C. 2001). "[C]ourts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions." *Id*. at 43. Nevertheless, when a court is asked to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality," the Supreme Court has cautioned that "the temporal proximity must be 'very close.' " *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (*quoting O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In two of the cases the Supreme Court cited to support this proposition, the circuit courts rejected delays of less than 4 months as insufficient to establish causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month delay insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month delay insufficient). This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone. *See Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a retaliation case"); *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 43 (D.D.C. 2004); *Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003).

Plaintiff has not introduced any direct evidence of retaliatory intent. Thus, the only basis on which a reasonable jury could infer retaliatory intent is through temporal proximity. Plaintiff first made contact with the EEO office, thereby obtaining Title VII's protection against retaliation, on September 28, 2001. Plaintiff's most recent protected activity prior to his reassignment occurred on April 16, 2002, when he filed his formal EEO complaint. Even

adopting the latter date as the benchmark, defendant's alleged retaliatory action did not occur

until October 2002 -- more than five months later.  As the cases cited *supra* indicate, a delay of 5

months is legally insufficient to permit an inference of retaliation.  Therefore, plaintiff has failed

to sustain a claim for retaliation, since he cannot satisfy the two requirements for proving a prima

facie case.

## CONCLUSION

Accordingly, defendant's Motion for to Dismiss and for Summary Judgment is granted.

Plaintiff's claims pre-dating August 14, 2001 are hereby dismissed with prejudice.  Summary

judgment for defendant is granted with respect to plaintiff's remaining claims.  An appropriate

Order accompanies this Memorandum Opinion.


_____ s/ _____
ELLEN SEGAL HUVELLE
United States District Judge

Date:  November 8, 2005